CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/1/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| **BRYAN E.[1],** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 6:20cv00069** |
| ) | |
| **KILOLO KIJAKAZI[2],** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Bryan E. ("Bryan") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. § 1381-1383f. Bryan alleges that the Administrative Law Judge ("ALJ") erred by failing to: (1) find that Bryan had arachnoiditis and met or medically equaled listing 1.04(B); (2) adopt a previous ALJ's finding that Bryan needed a cane and could stand and/or walk only two hours; (3) resolve an apparent conflict with the Dictionary of Occupational Titles ("DOT"); and (4) properly assess his subjective allegations regarding his pain.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 14) and **DENYING** Bryan's Motion for Summary Judgment (Dkt. 11).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Bryan failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Bryan filed for SSI and DIB benefits in July 2018, claiming that his disability began on March 14, 2018[4], due to injury of spinal nerve root at S1 level, lumbar foraminal stenosis, lumbar post-laminectomy syndrome, chronic neck pain, sciatica, cervical and low back pain, insomnia, depression, and failed back surgery.[5] R. 223, 249.[6] The state agency denied Bryan's claims at the initial and reconsideration levels of administrative review. R. 76–89, 90–103, 108–22, 123–37. ALJ H. Munday held a hearing on August 28, 2019, to consider Bryan's claims for DIB and SSI, where vocational expert Sara Statz testified and Bryan was represented by counsel. On December 12, 2019, the ALJ entered her decision considering Bryan's claims under the familiar five-step process[7] and denying his claim for benefits. R. 15–26.

The ALJ found that Bryan suffered from the severe impairments of degenerative disc disease of the lumbar spine (status post-remote history of laminectomy) and degenerative disc

---

[4] Bryan initially alleged a disability onset date of June 1, 2014 but amended it to March 14, 2018 at the hearing. R. 15.

[5] Bryan was 42 years old on his alleged amended onset date and 44 years old on the date of the ALJ's decision, making him a younger person under the Act. R. 123.

[6] Bryan's date last insured was December 31, 2019; thus, he would need to show that his disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 16; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[7] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

disease of the cervical spine. R. 18. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 19. Specifically, the ALJ considered listing 1.04 (disorders of the spine). The ALJ found that Bryan had no medically determinable mental impairments. R. 18.

The ALJ concluded that Bryan retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 19–20. Specifically, Bryan can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently but can stand and/or walk only four hours in an eight-hour workday. Bryan can never kneel, crawl or climb ladders, ropes, or scaffolds or be exposed to unprotected heights, he can occasionally climb ramps and stairs, balance, stoop, crouch, reach overhead, and be exposed to vibrations and moving machinery, and he can frequently push/pull with the upper extremities and be exposed to extreme cold. R. 20. The ALJ determined that Bryan was unable to perform his past relevant work as an estimator, project director, or electrician, but that he could perform jobs that exist in significant numbers in the national economy, such as ticket seller, routing clerk, or furniture rental consultant. R 24–25. Thus, the ALJ concluded that Bryan was not disabled. R. 26. Bryan appealed and the Appeals Council denied his request for review on August 27, 2020. R. 1–3.

## ANALYSIS

Bryan alleges that the ALJ erred by failing to: (1) find that Bryan had arachnoiditis[8] and met or medically equaled listing 1.04(B); (2) adopt a previous ALJ's finding that he needed a cane and could stand and/or walk only two hours; (3) resolve an apparent conflict with the DOT; and (4) properly assess his subjective allegations regarding his pain.

---

[8] Arachnoiditis is caused by the inflammation of the arachnoid, one of the membranes that surround and protect the nerves of the spinal cord. See https://www.ninds.nih.gov/disorders/all-disorders/arachnoiditis-information-page

### A. Medical History Overview

Bryan has a history of radiating back pain even prior to his alleged onset date, and underwent a microdiscectomy in 2008 due to a herniated disc; however, the surgery did not improve his symptoms, which he reports have worsened over time. R. 315, 325. Bryan has tried various treatment without reported success, including epidural injections, spinal cord stimulator, and land and water physical therapy. R. 325, 368, 458. During the relevant period and prior, Bryan was consistently prescribed opioids for pain management. R. 392.

At an appointment for an initial pain evaluation at the Pain Care Center of Lynchburg in June 2016, Duane Dixon, M.D., listed diagnoses of postlaminectomy syndrome, not elsewhere classified arachnoiditis, along with chronic pain syndrome, nicotine dependence, lumbar spondylosis, radiculopathy, and sacroiliitis, not elsewhere classified. R. 399. The Commissioner points out that Dr. Dixon did not "refer to any radiological findings . . . to support his diagnosis [and] "there is no diagnosis of [arachnoiditis] elsewhere in the record." D.'s Br. at 3, Dkt. 14. An MRI of the lumbar spine in February 2017 showed relatively mild degenerative and disc pathology, with some scar tissue along the left posterior margin suspected with enhancement. R. 390.

Bryan saw Larry S. Smith, M.D. approximately once a month for pain management prior to and during the relevant period. R. 414–16. Bryan also presented for a cervical spine surgical evaluation in December 2018 and again in June 2019, with complaints of neck and arm pain of 5 at the first visit, and back pain at 6 and leg pain at 7 at the second visit. R. 744, 756. A SPECT CT and X-ray were taken and in June 2019 and Jonathan Carmouche, M.D. assessed lateral listhesis at L4-5 and a prior laminotomy defect on the left. R. 744–45.

1. Medical Opinions

In January and April 2019, respectively, state agency physicians Richard Surrusco, M.D. and William Rutherford, M.D., reviewed the record and both found Bryan was capable of a limited range of light work and did not meet listing 1.04. R. 84, 98. The ALJ found these opinions persuasive. R. 23–24.

At the request of the ALJ, Eric D. Schmitter, M.D., an orthopedic surgeon, also reviewed the record and completed a Medical Statement of Ability to do Work Related Activities (Physical). Dr. Schmitter found Bryan capable of a limited range of medium work with postural limitations. R. 729–38. He also concluded Bryan did not meet a listing, and though he uses a cane, it was "not prescribed" and he did not require it to walk. R. 731. The ALJ found Dr. Schmitter's opinion somewhat persuasive. R. 22.

**B. Listing 1.04(B)**

Bryan argues that the ALJ's finding that he did not have arachnoiditis is not supported by substantial evidence, asserting that "if [he] has arachnoiditis, then he meets Listing 1.04(B)." The Commissioner states that the ALJ's finding that Bryan does not meet a listing is supported by substantial evidence.

The listings are impairments that are "severe enough to prevent an individual from doing any gainful activity" and if a claimant's impairments meet all the criteria of a particular listing, or are medically equivalent to a listing, the claimant is considered disabled. 20 C.F.R. § 416.925(a), 20 C.F.R. § 416.920(d). The medical criteria defining the listed impairments is set at a higher level of severity than the statutory standard disability. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). Further, the claimant has the burden of proving that his or her impairments meet or medically equal a listed impairment. Hancock v. Astrue, 667 F.3d 470, 476 (4th Cir. 2012). As a

result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan, 493 U.S. at 530–31; see also 20 C.F.R. § 416.925(c)(3).

Under Listing 1.04(B), at the time of the ALJ's decision, Bryan is entitled to a conclusive presumption of disability if he can show that he has spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, and resulting in the need for changes in position or posture more than once every two hours. See 20 C.F.R. pt. 404, subpt., P., app. At § 1.04(B). In discussing Listing 1.04(B) the ALJ acknowledged that Bryan was diagnosed with arachnoiditis in June 2016 by Dr. Dixon, two years prior to his alleged onset date, but states that "the medical evidence of record for the period at issue does not contain an MRI confirming arachnoiditis. The record contains no MRIs since the amended alleged onset date." R. 19. The ALJ then specifically discusses each of the imaging in the record, as follows:

> A lumbar MRI completed in February 2017 showed 'relatively mild' degenerative and disc pathology at L5-S, scar tissue along the left posterior margin, but no finding of arachnoidits. A cervical MRI completed in January 2018 showed C4-5 and C5-6 degenerative disc disease with associated right-sided neural foraminal narrowing, but no finding of arachnoiditis. A June 2019 Lumbar SPECT CT image showed no abnormal uptake and no spondylosis in the prior laminectomy defect with dysmorphic facet joints.

R. 19. Further, the ALJ noted that Dr. Schmitter, a medical expert who reviewed the medical record, determined that Bryan did not meet or equal a listing. Likewise, the state agency doctors, whose review of the record included the June 2016 arachnoiditis diagnosis by Bryan's pain doctor, found Bryan did not meet or equal a listing. R. 23–24. Finally, the ALJ concluded that Bryan's claim that he stayed in bed "most of the time" does not indicate that he must change position more than once every two hours.

7

Bryan characterizes the ALJ's determination that Bryan does not meet or medically equal a listing as "based on the lack of confirming opinion by later-treating physicians." Pl.'s Br. at 5. However, while the ALJ does note that no other doctor diagnosed Bryan with arachnoiditis, the ALJ acknowledged Dr. Dixon's diagnosis, but determined it did not meet listing 1.04B because it did not meet all the elements. See Sullivan, 493 U.S. at 530 ("For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Further, a diagnosis of a particular condition, by itself, is insufficient to establish that a claimant satisfies a listing's criteria. 20 C.F.R. § 416.925(d) ("Your impairment cannot meet the criteria of a listing based on a diagnosis."); see also Mecimore v. Astrue, No. 5:10-CV-64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

Bryan also takes issue with the ALJ's characterization of Bryan as having a normal gait, normal reflexes, negative straight leg raising, and intact sensation on exam, arguing that she failed to mention several instances of abnormal gait, decreased sensation, positive straight leg raising, and reflexes of 1+. However, almost all the instances pointed out by Bryan are from records prior to his amended alleged onset date. Further, the ALJ clearly recognized Bryan's back and leg pain, including finding severe impairments of lumbar and cervical degenerative disc disease, and noting clinical findings of cervical and lumbar pain and spasm, radiating pain, intermittent foot drop, and decreased cervical and lumbar range of motion. This is the ALJ's job, to weigh the evidence, and substantial evidence supports her determination that Bryan did not meet or medically equal a listing.

This is not a case where the ALJ failed to consider a listing, but rather where the ALJ considered the evidence in the record, and determined that although Bryan had severe impairments of degenerative disc disease of the lumbar and cervical spine, his impairments individually or combined did not meet or medically equal Listing 1.04B or any other listing. R. 18–19. It is the job of the ALJ to weigh evidence and resolve any evidentiary conflicts. To the extent Bryan asserts that medical evidence is present that strongly supports Listing 1.04B, the ALJ concluded otherwise, considering all evidence in the record, and her decision is supported by such evidence.

### C. Previous ALJ Ruling

Bryan points to a previous decision denying disability in March 2018, and argues that the ALJ should have adopted the findings in that decision regarding the number of hours that Bryan can stand and/or walk in a workday, and that he requires a cane to walk. In support, Bryan repeats his argument that the ALJ ignored portions of the record, and also states that his reports of leg weakness to his providers call into question the ALJ's conclusion that he can stand and/or walk for four hours a day.

The ALJ referenced the previous ALJ's March 13, 2018 finding that Bryan was capable of a limited range of light work but could only stand and walk up to two hours. R. 23. The ALJ indicated that she gave the prior ALJ decision great weight, noting that the finding that Bryan is capable of light work is "consistent with [his] mild degenerative findings on imaging of the cervical and lumbar spine, and clinical findings of normal gait, normal upper and lower extremity strength, negative straight leg raising, normal reflexes, and intact sensation." R. 23. The ALJ also specifically addressed the previous ALJ's finding that Elder required the use of a cane, but concluded that "the medical evidence does not support a need for a cane." R. 23. The

ALJ acknowledged that Bryan was noted in various records to use a cane (and once, a walker), but "the record does not contain a prescription for a cane or ambulatory aide." R. 23. Likewise, no doctor provided an opinion that Bryan required a cane for walking, and the ALJ noted that, although Bryan did appear at doctors' appointment with a cane, he often had normal gait. R. 419, 429, 438, 676, 683, 689. Bryan argues "the lack of a prescription for a cane does not preclude a finding of medical necessity." Pl.'s Br. at 12, Dkt. 12. However, likewise, even if a cane is prescribed, it does not necessarily mean it is "medically required" as determined by the regulations. Scheuvront v. Berryhill, No. 3:17-CV-84, 2018 WL 3148230, at *5 (N.D.W. Va. Feb. 8, 2018) (collecting cases). The ALJ must consider not just whether a cane has been prescribed, but instead must determine whether a claimant's use of a cane is medically necessary. See e.g. Titles II & Xvi: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P (S.S.A. July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . ."). Here, the ALJ considered the record, including the lack of a prescription for a cane, and multiple findings on exam during the relevant period of normal gait and normal lower extremity strength. R. 23.

      The ALJ was not required to adopt the entirety of the March 2018 opinion or impose the exact same RFC; instead, she was required to consider the prior findings of the ALJ, including such factors as whether the claimant's medical condition has changed, and how much time has passed between the two decisions. R. 23. The ALJ adequately supported her RFC in her opinion by citing to the medical record and the medical opinions, including the medical opinions from the state agency doctors who both found Bryan capable of standing and/or walking at least four

hours per day. R. 85–86, 118–20. Likewise, and the medical expert, Dr. Schmitter, found Bryan capable of a modified range of medium work, including sitting for six hours, standing for four hours, and walking for three hours over an eight-hour day. 730–34. Additionally, the ALJ asked whether Bryan would still be able to do the jobs provided by the vocational expert if using a cane for walking and balance, and the vocational expert testified that the jobs provided would not be impacted by including this limitation. R. 26.

### D. Resolving Apparent Conflict with the DOT

Bryan still contends, however, that the cane issue is not harmless error, despite the vocational expert's testimony regarding cane use, because all three "jobs require [some amount of] handling and fingering" and Bryan could not do any of the jobs "while holding a cane in one hand." Pl.'s Br. at 13, Dkt. 12. Thus, Bryan argues that there is an apparent conflict with the Dictionary of Occupational Titles. However, the ALJ resolved any conflict through questioning the vocational expert at the hearing, described as follows in the opinion:

> [I] asked the vocational expert if there were any conflicts, apparent or otherwise, between her testimony and the DOT. The vocational expert testified to a conflict between the DOT exertional classification of the jobs of estimator and project director and her professional experience of the exertional level of this composite job as generally performed. She further testified her statements regarding reduced standing and walking, overhead reach, use of a cane, and absenteeism, were based on her professional experience.

R. 26. At the hearing the vocational expert explained that using a cane for walking would not impact the jobs of ticket seller, routing clerk, and furniture rental consultant because these jobs "do not really have lifting or carrying duties when they are walking . . . so [a cane] would not impact them . . . ." R. 51.

11

The DOT indicates that the occupations of ticket seller, routing clerk, and furniture rental consultant all require some degree of handling and fingering.[9] However, the explanation provided complies with the requirements set out in Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), and Social Security Ruling ("SSR") 00-4p, 65 Fed. Reg. 75760 (2000), 2000 WL 1898704, for the ALJ to "[i]dentify and obtain a reasonable explanation for conflicts between the vocational expert's testimony and the DOT." Pearson, 810 F.3d at 208–209 (holding that "Ruling [SSR 00-4p] explains that '[i]f the [VE]'s . . . evidence appears to conflict with the [DOT], the adjudicator will obtain a reasonable explanation for the *apparent* conflict' ") (emphasis in original). Here, the vocational expert adequately resolved any conflict by explaining that the jobs listed did not require both hands for lifting or carrying items when walking; thus, using a cane for walking would not impact someone's ability to do the job duties. See, e.g., Adams v. Berryhill, No. 6:16-1721, 2017 WL 4048385, at *11 (D.S.C. July 11, 2017) (finding "plaintiff's use of a cane during the limited occasions in which she may choose to stand to relieve her back pain would not preclude frequent bilateral use of her hands").

### E.  Subjective Allegations

Bryan argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Specifically, Bryan asserts that the ALJ over-relied on a statement in the record that, "[Bryan's] medication was helping his back pain considerably so he could do necessary activities" when the record contains numerous statements from Bryan that his pain was not adequately controlled by medication and had been increasing over the years. Pl.'s Br. at 15, Dkt. 12.

---

[9] Ticket seller (DOT # 211.467-030) requires constant handling and fingering, Routing clerk (DOT #222.687-022) requires frequent handling and fingering, and Furniture rental consultant (DOT #295.357-018) requires occasional handling and fingering.

12

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims,[10] SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[11] First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[12] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a discussion of Bryan's medical history, along with his allegations, and the ALJ adequately supported her finding that Bryan's allegations were not

---

[10] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016).

[11] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[12] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

entirely consistent with the medical evidence and other evidence in the record. The ALJ acknowledged Bryan's testimony that he used a cane, could lift "about a gallon of milk," sit or stand for 20 minutes before changing position, walk about the length of a football field, and do "light laundry and light microwave cooking" but no dishes or vacuuming. R. 20, 41, 44.

The ALJ did write that Bryan "reported his medication was helping his back pain considerably so he could do necessary activities" and cited specifically to the medical record indicating such. R. 20, 674. This same record stated that Bryan reports pain at 7/10 and "good tolerance of treatment and fair symptom control." R. 674. Further, contrary to Bryan's assertions that the ALJ unfairly focused on that single record, the ALJ also noted other occasions where Bryan complained of pain to his providers, and acknowledged findings of cervical and lumbar pain and spasm, pain radiating into the leg, shoulders, and arms, foot drop, and decreased cervical and lumbar range of motion.[13] R. 21–22. In June 2019, the Bryan complained of back pain of 6 and leg pain of 7, on average, but the record notes that Bryan's intervention based pain score is 2, indicating "pain controlled by prescribed pain medication on dosing schedule as prescribed." R. 744. The ALJ found that Bryan's "statements about the intensity, persistence, and limiting effects of his symptoms [are] inconsistent. R. 20. The ALJ also highlighted that on exam he often had normal/stable gait, normal strength, intact sensation, normal reflexes, and negative straight leg raising, and that his treatment during the relevant period was "conservative and generally limited to medication from pain management." Id. Indeed, Bryan's primary treatment during the relevant period was medication for pain management. This does not mean that Bryan

---

[13] For example, on physical exam he also often showed decreased range of motion to flexion, extension, and rotation. R. 429, 433, 438, 512, 525. However, on other occasions he had no foot drop and normal gait. In June 2017, he had decreased sensation in his leg. R. 507. However, during a June 2019 visit to Carilion Clinic on physical exam he had generally unremarkable findings, including showing no sensory deficits in the lower extremities. R. 744.

had not sought out other treatment options, including surgery. However, in the record before us, no doctor recommended surgery.[14] At his cervical spine surgical evaluation in June 2019, Dr. Carmouche wrote "we need a new lumbar MRI and an NCS/EMG on the left leg prior to considering surgery." R. 744–45. As the ALJ noted, on physical examination at this June 2019 visit, Bryan had stable gait, full strength in his lower extremities, no sensory deficits in the lower extremities, and "normal upper and lower extremity reflexes which were 1+ throughout." R. 744.

This is a difficult case, as Bryan, who clearly suffers pain, has tried, but reported little success, with various treatments over multiple years, and no doctor has offered him a complete solution for his pain. Bryan has pointed to a few physical exams showing antalgic gait and sensory deficits that the ALJ did not specifically acknowledge; arguing there is some support in the record for a contrary conclusion. However, there is also support in the record for a finding that Bryan is not disabled, including multiple physical exams showing normal gait and no sensory deficits, three opinions by reviewing doctors finding no disability, and no opinions by any doctors that Bryan is disabled. Thus, I conclude the ALJ's decision is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) (A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion.)

Here, the ALJ considered the whole medical record, all the available opinion evidence, and sought out medical expert opinion evidence. "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve

---

[14] Likewise, even prior to the alleged onset date, during an April 2017 visit to the UVA Spine Center, Bryan was assessed with lumbar pain radiating to the left lower extremity with numbness and weakness, and the doctor recommended following up with the pain clinic, indicating his "painful symptomology appears consistent with chronic neuropathic pain. I do not see a surgical solution." R. 385.

15

conflicts in the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). Thus, even if I would have made contrary determinations of fact, I "must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence." Stevens v. Colvin, No. 6:14-CV-00021, 2015 WL 5510928, at *4 (W.D. Va. Sept. 16, 2015) citing Whiten v. Finch, 437 F.2d 73, 74 (4th Cir.1971). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Id. (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1987)).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported her analysis of Bryan's subjective complaints with substantial evidence, and that Bryan is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: October 29, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge